and I'm the attorney for the plaintiff and appellant Michael Newman. May it please the court, can I reserve two minutes for rebuttal, please? Thank you. In addressing a motion for summary judgment, the district court is to take the facts in a light most favorable to the non-moving party, which in this case is Mr. Newman, the appellant. The court here did essentially the reverse. It viewed the facts in a very pro-defense light. Well, we have to know her reviews, so arguing with the district court is unnecessary. Just go right to the heart of your argument. Sure. Well, this is a case, of course, about hot pursuit. And the factual concern I have, and I'm not going to attack, I guess, the magistrate, but rather say why I think the facts matter. The factual concern I have is that the omitted facts, in particular, Deputy Underhill's statement about where the driver he was pursuing was last seen, go directly to the question of whether the subsequent entry into the home was immediate and continuous for purposes of the hot pursuit exception. In addition to omitting that fact about where the driver was last seen, the district court also omits Deputy Underhill's statements about the fact that he doesn't know whether the driver went into the home and that the driver went somewhere over to the rear of the residence. Which is why he looked in the backyard first. Exactly. And not having found him in the backyard, given the terrain, why wasn't it reasonable, more than reasonable, to believe that he had gone into the house? Well, now, that's a separate question from whether hot pursuit existed. Probable cause is one thing. Do you concede probable cause? No. Well, okay. So that's why I thought not. That's why I asked the question. Right. Well, having seen him go there and not finding him in the backyard, why isn't the pretty much the only logical conclusion is that he must have gone into the house? Well, but let's be careful about what the facts are. Your Honor just said, having seen him go there. The actual state of the evidence is Deputy Underhill radios that this individual is last seen going toward a residence at 4083 Camellia Drive. That fact is to be taken into light most favorable to Mr. Newman. So it's not that he saw him go into the backyard. Indeed, Appellee's own brief states on page 18, he saw him run toward the back of the property, if not actually enter the backyard. I thought that he saw him running toward the back of that house. Toward, right. But toward is not enter the backyard. And that makes a difference. So he went down somewhere over to the rear of the residence, is what Deputy Underhill says. So he went after him to the rear of the residence. I don't understand why that fact isn't a fact. It is a fact. Okay. Is it probable cause to enter a home in the middle of the night through the back door when the deputy has no idea what the nexus is between this individual and that home? Does that matter? Suppose he runs into some perfect stranger's house. That's even more dangerous and more and more important for the police to follow. Right. Well, danger is not the test for the Fourth Amendment. Probable cause requires more than danger. Even a homicide case or a domestic violence case doesn't make the Fourth Amendment just evaporate. Okay. I think, is it not undisputed that Deputy Underhill saw him go down somewhere over to the rear of that specific residence? That's what he says. That's what he said, yes. Okay. He looks in the backyard, doesn't find him. Where else could he be in the house? He could also be in one of the neighboring yards. The deputies, Deputy Underhill and Deputy Barmer, spent several minutes using their flashlights to look into the neighboring yards to the immediate... And he wasn't there either. So certainty is not required for probable cause, is it? Just probable cause. That's correct. However... He's not in the neighbor's yard, and there's the back door to a house there within the area. Why isn't that an appropriate probable cause finding as a matter of law? Well, I'm going to say there's two different issues going on here. There's probable cause, and I don't want to get too back on the ropes about probable cause because the other issue, both of which has to be satisfied here, is hot pursuit. Hot pursuit and probable cause both must be satisfied in order for the entry to be valid. Hot pursuit. Let me answer the question about probable cause, first of all. The driver had no nexus to this house. The deputy did not know the driver. The deputy did not know the car. This car came to this house. This individual ran toward the rear of the house. But where that person went after that was not clear at the time to this deputy. The warrant requirement for entering into a home, I would say, is not easily waived merely because someone ran into the vicinity of a home in the middle of the night. That happens all the time. Another option... Didn't the deputy testify that he heard noise consistent with the door opening and closing? In his declaration attached for purposes of motion for summary judgment, yes, the deputy did testify. And that's under oath, of course. Yes. However, that testimony is contradicted by the evidence of what occurred at the scene in terms of his own statements and his own actions at the scene because a reasonable inference for a jury to reach is that if he had heard that noise, he would have relayed that fact to his colleagues at the time, but he did not. That's not an inconsistency. That's just different information. It's different information that is to be viewed in the light most favorable to Mr. Newman as the non-mover. Well, he heard something. So he says. And the back door was unlocked. That is undisputed. Right. Well, yes, that's what he said at the time. In terms of whether this entry constitutes hot pursuit, which also has to be satisfied here, there has to be an immediate and continuous flow of the pursuit into the home. Does it have to be reckless? No. Good. Okay. It has to, however, flow into the entries to the home in a way that's immediate and continuous and some framework for that. Should we run a clock or should we focus on what the deputies were doing? I think it's a totality of the circumstance type analysis. I think time matters. And here the nine-minute interval between the termination of the pursuit and the entry to the home is certainly significant in the sense that it's far more than the two-minute break that occurred. But it isn't really nine minutes because they are searching for him during much of that time. So why isn't that part of the pursuit? Follow to the backyard. Look around the backyard. Look at the neighbor's yard. Why isn't that all part of the pursuit? Because what your version of it is, if you don't find him immediately, you're not pursuing. That's how you get to nine minutes. But it seems much, much more continuous to me. If that were the rule, though, Johnson would have come out the other way. In Johnson, there's a half-an-hour search for this individual. If the rule were that searching for that person. Except during that time, as I understand that case, they never saw the suspect. They didn't know where he'd gone. They didn't have any clue as to where he was, which is quite different than the situation here. That's why it does tie back to the question of probable cause because you're dealing with a fairly limited geographic scope here. And there, the person fled into the woods, and they didn't know where he could possibly be. And here, there's a closed backyard, which he's not in, but he's gone into it, and an open back door. It just seems completely different to me. And 30 minutes is a long time. It's not continuous. Right. Well, does it matter that the officers, or deputies, rather, heard voices from inside the house, knowing then that if their suspect had gone inside, that someone else was also present? Well, I don't think there's any evidence that someone else was also present. It's not really clear who's there. They heard voices. Was Dela Cruz talking to himself? Yeah, I think the evidence is not clear about whether voices refers to multiple voices or a voice. I don't think that is necessarily clear. In any event, assuming, for the sake of argument, that there were multiple voices, there was no indication of any sort of drama or any kind of domestic violence-type situation that would require going into the home immediately, as opposed to, for example, knocking on the front door of the house or getting a warrant, which would have been reasonable approaches to take under the circumstances, given that nine minutes of investigation is going by. And I appreciate Your Honor's point about the fact that that investigation, in some sense, does follow from the pursuit. But the point is, when a helicopter is flying around using infrared vision and when there's flashlights being shined in other people's backyards, there's people shouting into the house, come out with your hands up, that's not a pursuit anymore, that's investigation. And similarly, when they go into the home and they start interrogating my client for 20 minutes, saying, you know, who do you know who drives this car? Oh, debating fresh pursuit with your client. Yeah. Well, that's no longer hot pursuit. That's now an interrogation of my client. So when they ultimately, 29 minutes after losing sight of this driver, they finally get to the driver through the consent of the driver. As I understand it, though, and I may be wrong about this, but I understood that your claim is that the violation occurred when they entered the home because they had no right to enter the home without a warrant. That's right. So the fact that they talked for 20 minutes after that is after the alleged Fourth Amendment violation happened. That's true. Okay. So it's not, it doesn't bear on the specific question that you've raised. Well, I don't entirely agree with that point. I think Fourth Amendment analysis is always about the totality of the circumstances, and I think it does matter that they spent 20 minutes interrogating my client. But that's not your claim. Your claim is that they should never have entered the house. So it's the entry that's the alleged violation. So what led up to that either is a hot pursuit or it isn't, regardless of whether they talked to him or didn't talk to him. Well, again, I view it somewhat differently, but you're the boss. I think I will reserve my remaining time. I'm sorry, I just have one question before you do. It's interesting, you seem to separate hot pursuit and probable cause. So, you know, probable cause is, you know, standard thing. But what is hot pursuit then? Is that a legal determination that the officer was in a hot pursuit? Yeah, hot pursuit comes from the idea, it's laid out in Welch v. Wisconsin, and it requires that the, it's actually a little bit murky, but the legal standard is the entry has to be immediate and continuous with the pursuit. Then why is that separated from the probable cause standard? Because wouldn't the probable cause calculus change by the fact that he is in hot pursuit, that officer is in hot pursuit? I agree that they would seem to kind of blend into each other to an extent. There might be scenarios where one is present and not the other. My contention here is they're both missing. Got it. Okay. Although I have a sense that might not be persuasive on that one. Thank you, counsel. Good morning, Your Honors. May it please the Court, my name is Dan Roberts, and I'm here on behalf of the appellees, the defendants below, Deputies Underhill, Deputy Laidlaw, and Sergeant Blankenship. The appellant's argument in this case, well, let me start with one thing that should just be laid out at the very beginning. There was some discussion in appellant's argument about danger and whether there was danger in going into the house. That's not really an issue here because this is a felony pursuit. And under the Lang v. California case from the Supreme Court three or four years ago now, I guess, the issue there was in a misdemeanor pursuit you must do a case-by-case analysis determining whether or not the hot pursuit justified setting aside the warrant requirement. But it kept the rule that in a felony pursuit context, the hot pursuit doctrine is a categorical exception. I read Lang differently than that. I thought that the Court did not decide for sure that a fleeing felon case always presents exigent circumstances. They assumed it for the purpose of decision. But I don't read it as actually deciding that there's a categorical rule. I would agree with Your Honor to the extent that the opinion of the Court in Lang was very clear that they were focusing on the misdemeanor context, and they were not ruling one way or the other on the question of felony. Okay, so they didn't decide for sure that a felony always justifies hot pursuit. But I think the plaintiff here, and if I'm wrong, I hope you'll correct, you know, counsel will correct me, but I think there's no dispute that the pursuit began because of a felony. That is correct, Your Honor. And there has not been a dispute in this case about whether or not the hot pursuit doctrine, if the facts justify it, would justify the excusal of the warrant requirement here. The dispute in this case has always been about whether the facts of the case support the application of the hot pursuit doctrine, and those requirements being immediacy and continuity of the pursuit. The defendants below, and as the Court pointed out here, it's just an over-review. The evidence before the Court is that Deputy Underhill began the pursuit of Mr. De La Cruz, who is not the plaintiff here, but it was plaintiff's roommate, learned later, began the pursuit actually during the commission of the felony. The felony was felony evading from a traffic stop. So there is no question about the immediacy of the pursuit. It began upon the observation of the felony. So the only question, then, is continuity. The deputy pursued by vehicle the suspect all the way to the subject house, plaintiff's house, saw him get out of the car. That's put out over the radio. It's heard in the belt recording that's in the record. De La Cruz sees the suspect with the vernacular foot bail, but flee on foot toward the resident. He puts that out at the time that he sees it. Now, the appellant makes a big point of, well, he said, last seen fleeing towards the residence. That's the last report on the audio recording. But that's not the end of the evidence. There is evidence here in the form of a declaration, which is how evidence on a summary judgment motion, one of the ways that evidence on a summary judgment motion can be put forward, that after that point he saw the suspect go into the backyard and that he heard sounds consistent with a door opening and closing. The appellant wishes to disregard, doesn't dispute those facts, doesn't offer any contrary evidence to those facts, just ignores them as being self-serving. But those, focusing only on what is corroborated by the audio recording. But there is no requirement that declaration testimony or if, you know, it would be deposition or however else the testimony in a summary judgment motion appropriate manner be presented, there's no requirement that it also be corroborated by an audio recording. Well, actually, the audio actually has more in it than what you said. He says last seen toward the residence at the address. He then says he went down somewhere over to the rear of the residence. He ran this way. I think he may be inside. I don't know if he made it inside. But because, yeah, because he came and locked the door, dude. Now, he hadn't locked the door, but it continued. That is correct, Your Honor. Quite a bit beyond just saying he ran toward the address. That is correct. My point is that you cannot discount or disregard the declaration testimony just because it's not corroborated fully by the audio. The evidence before the court, both below and, of course, here in the record, is that the deputy saw him go into the backyard and heard the sounds consistent with the door opening and closing. It was included in the declaration. It's consistent with the audio recording. There is nothing in the appellant had the opportunity below and here, consistent with the record, on summary judgment then to do one or both of two things. He could argue that the evidence put forward does, including the declaration, does not support the requirements of the hot pursuit exception. He could offer contrary disputing facts. He could dispute the evidence by offering contrary evidence of, well, somebody else saw him run away, or the audio recording says he ran down the hill instead of into the backyard, or a neighbor saw something else, or the flight officer in the helicopter saw something else. There is no such evidence here. Of course, there is no such evidence because we know after the fact that the suspect did go into the house. That's where he was arrested. That wasn't known to the officer or the deputy at the time. But there is no contrary evidence for the appellant to point to. And the appellant does not argue anywhere that the facts, the evidence that the defendants did submit, including the declaration, do not support the application of the hot pursuit doctrine. All the appellant offers is that, well, if you look just at the audio recording, and I agree with Your Honor that there's more to the audio recording than the appellant focuses on, but he said last seen toward the residence. Even if you focus just on that, last seen toward the residence is a report put out by radio at the time. He gets out of the truck. I see him run toward the residence. It doesn't account for what he sees after that point, after he clicks his mic, puts that out over the air, and it's caught on his belt recording. So the only thing that the appellant can fault then is that, well, the deputy did not continue to narrate on his audio recording everything else that he saw after that point. So you should disregard his later testimony. There is no contrary evidence, and the absence of corroboration is not a basis to ignore the evidence that there is. So what we have here is we have undisputed evidence in the testimony of the deputy and no argument that under that evidence the hot pursuit doctrine does not apply. With that, the hot pursuit doctrine excuses the failure to get a warrant to go into the house under those circumstances. We do have a, what I would believe is it's, I guess it was a semi-separate question of probable cause. I agree with the appellant that you have to have both. You have to have in this circumstance the hot pursuit exception to the warrant requirement to justify not getting a warrant, but you still have to have probable cause to believe the suspect. Sure. You can't just go barging into every house on the street. Exactly. I can't remember the name of the case, but there is a case out of this circuit, or perhaps it's the Supreme Court, where there was hot pursuit into a hotel, but there was not probable cause to believe that the suspect ran into every room there and the police were found. And unfortunately, I can't remember the name of the case. But you need to have probable cause for that. But here there is more than sufficient probable cause. As Judge Graber pointed out in appellant's argument here, the suspect is seen going into the backyard. It's enclosed. It's on a hill. There's a fence. There's a drop-off. He's not in the backyard. He didn't go over. It is at least probable that he went into the house. It doesn't require certainty. It's not beyond a reasonable doubt that, well, there's some doubt here he could have gone somewhere else. We're talking about probable cause here. It was probable he went into the house. And, of course, he did. That is all that is necessary in this case here, is that the evidence provided supports judgment as a matter of law in favor of the defendants and that there is no evidence on which to controvert the defendant's evidence here. Only questions about lack of corroboration but no contrary evidence. I take it you would agree that if the deputies had conferred outside for, let's say, half an hour or more about what to do, that we probably would no longer be talking about hot pursuit. Probably not. If they had, I think time is a factor. It's not dispositive. I think what is dispositive, and particularly looking at the Johnson case, what was dispositive there was, yes, there was time. There was also the fact that they had no idea where he went. The suspect there ran out into the woods and could have gone in any number of directions. But also there was an actual physical break in the pursuit. The pursuing officer left the scene of the subject property, went back to a different area, I believe about a quarter mile away, where the pursuit started to go and pick up his, I think it was his O.C. spray canister there. The pursuit ended and he left and came back later. That is by any definition of the word continuous, not continuous. He left and went away. We have no such thing here. We have a situation where the suspect was chased to a certain location. And rather than continue, like, he's not here, he went here. I, as the deputy, have an option, a question to ask myself. Sorry, I'm tripping on my words a little bit here. I chased him to the backyard. I heard the sounds of a door opening and closing. I'm by myself. I can run into the house after him by myself or I can wait for backup. Not wait half an hour or an hour. Wait a number of minutes for backup. Do we know from the record how long it was between the time he asked for backup and the backup arrived? Obviously it's less than nine minutes, but do we know more precisely than that? Off the top of my head, Your Honor, I'm sorry, I don't. I do know that there was not a real – he did not request backup at the time. He knew backup was on its way. In this particular area, it's somewhat unique. This is Sheriff's deputy. His area of patrol is unincorporated county area. The location of the end of the pursuit is actually incorporated city, so it's a little bit out of his jurisdiction. The way that it works out there, this is somewhat outside the – Dr. Newman reminded him, as I recall. I believe he did say that. My point being that the deputies all responding to it were confusing, and it's on windy streets up in the hills. It is confusing to get there. My point being, however, the deputy under Hill did not call for backup at the back door. He knew backup was on its way. It was slightly delayed. It was some small number of minutes, certainly, I believe, less than seven, certainly less than nine that he waited there for backup, and then proceeded to call in to the house and have the conversation with the plaintiff yelling through the door to the plaintiff in another room before entering. I believe that's as far as we need to go. I believe I've adequately briefed the question of qualified immunity, which we don't need to get to, but I have nothing further to add to my briefing on that. In my last 20 seconds, I did want to focus on the Bain Act issue under state law. Again, we don't need to get there if there's no constitutional violation, but the appellant's position on that point requires ignoring the word by in that statute, that the violation occur by threats, intimidation, or coercion. The violation here, thank you, Your Honor. Wrap up. Just to finish my sentence. The violation here entering, crossing the threshold into the house, had already happened before any of the actions that the appellant states were the threats, intimidation, or coercion had happened. Thank you very much for your time, Your Honor. Very briefly, I don't want to get too much into the swamp of facts, but my colleagues suggest that there is no contrary evidence to Deputy Underhill's statements in his declaration, and I just think that's not the case, and fundamentally it doesn't respect the way evidence is to be viewed on summary judgment. There's quite a bit of evidence contradicting the deputy's declaration, and it consists of the deputy's own statements at the time and the deputy's own actions at the time. If the deputy heard, it is a reasonable inference, that if the deputy heard somebody opening and closing the door, he would have said that to somebody at the time. The district court said that the underhill can be heard on the audio recording mentioning a door. Yes, and what he says is there's an unlocked door. That's what he broadcasts over just that. Well, first he says he came and locked the door, dude. Right. And then he says, ah, we got an unlocked rear door, because he's presumably moved from hearing a sound to looking at it. Well, that presumption, again, that's not going to help. Well, it's what makes sense. He says he came and locked the door. Ah, we got an unlocked door. Right. So one way to look at that fax is the deputy is checking different doors. He finds one locked, one unlocked. Where is there evidence that there's more than one door? Well, I've been to the house. There's, like, five doors. You're not a witness. Where is it in this record that says that he tried different doors? My point is the evidence is to be viewed in a light most favorable to Mr. Newman, and a reasonable inference is that if the deputy heard the sound of a door opening and closing, he would have said so. If the deputy went into the backyard and then ---- Which justifies even further his view that somebody's just gone in there. Well, I guess my point is there is a tension in the evidence. There's a tension in the evidence. There are different ways to view it. But if there's a tension, then none of the tense ways of looking at it detracts from probable cause. I don't understand how it helps you. Well, because it's not just probable cause. It's also hot pursuit. And I understand I might not be persuading you on that point, but my point is the tension goes to hot pursuit. And if the facts are just left out such that hot pursuit is sort of a foregone conclusion, then my client is not getting the benefit of the evidentiary inferences to which he's entitled on summary judgment. I think there's an evidentiary issue there that should go to the jury. Thank you, counsel. Thank you very much. This case is submitted.
judges: GRABER, Hamilton, BUMATAY